91 F.3d 146
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Paul McKINLEY, Petitioner-Appellant,
v.
Kenneth DOBUCKI, Warden, Graham Correctional Center
Respondent-Appellee.+
No. 95-1538.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 11, 1996.*
Decided July 12, 1996.
 
 Before POSNER, Chief Judge, and PELL and EVANS, Circuit Judges.
 
 ORDER
 
 1
 Paul McKinley brings this appeal from the district court's denial of his petition for a writ of habeas corpus. 28 U.S.C. § 2254. McKinley, in his petition (the second petition that he filed in the district court arising from his incarceration following an Illinois state conviction for robbery and aggravated battery), asserts two bases for relief. First, he claims that he was denied effective assistance of counsel and due process because the trial judge refused to grant his attorney a continuance at the close of testimony in order to prepare for closing argument. Second, McKinley asserts that the trial judge denied him the right to interview, question, and/or cross-examine a witness, Michael Ware (McKinley's accomplice), in violation of the Sixth Amendment.[1]
 
 
 2
 In his first petition, United States ex rel. McKinley v. O'Leary, No. 88 C 6462, 1989 WL 31073, 1989 U.S.Dist. LEXIS 3443 (N.D.Ill. Mar. 23, 1989), which was denied by the district court (whose ruling he did not appeal), McKinley asserted six grounds for relief. Three of the grounds were based upon the trial court's restricting his counsel's attempts to introduce certain pieces of evidence. Two of the grounds involved alleged bias by the trial judge in favor of the prosecution. The sixth ground involved remarks made by the prosecutor during closing argument. McKinley, 1989 WL 31073, at * 1-* 3, 1989 U.S.Dist. LEXIS 3443, at * 2-* 9.
 
 
 3
 The district court dismissed McKinley's current petition on the ground that he had abused the writ and, with respect to part of his evidentiary claim, that it was successive to his earlier petition. The court distinguished between the "abuse of the writ" defense, and the "successive petition" defense, stating that the former applies when a petitioner raises in his subsequent petition bases for relief that he did not assert in his prior petition, while the latter applies when a petitioner raises in a later petition a ground of relief that is identical to that which he asserted in an earlier petition. The court also found that the "ends of justice" would not be served by reaching the merits of the subsequent petition, and therefore refused to grant relief under this narrow exception to the abuse of the writ and successive petitions limitations on habeas corpus relief.
 
 
 4
 On appeal, in addition to reiterating his two substantive arguments, McKinley urges us to find that the district court erred in dismissing his petition as successive to his prior petition and an abuse of the writ, because it did not notify him that it would rely upon these grounds and give him an opportunity to explain why he did not raise these bases for relief in his first petition. He then argues that the reason that he failed to raise some of his claims in his earlier petition was that he did not learn of the factual basis of these claims until after the first petition was filed. He does not take issue with the district court's finding that he had presented part of his evidentiary claim in his earlier petition. We conclude that the district court properly dismissed McKinley's petition.[2]
 
 
 5
 Some of the claims in McKinley's instant petition appear to have been asserted in his first petition; others he did not raise before. Thus, technically we must look to two doctrines to determine whether the district court should have entertained the second petition, namely "abuse of the writ" and "successive petitions." Because the same standards apply in "abuse of the writ" and "successive petition" cases, see Sawyer v. Whitley, 505 U.S. 333, 338-39 (1992) (enumerating the same bases for a court's reaching the merits of a subsequent petition asserting previously argued claims as one bringing new claims), we treat all of McKinley's current claims as if they were asserted for the first time.
 
 
 6
 A district court's power to dismiss a petition for a writ of habeas corpus when the petitioner previously filed a petition alleging that the same incarceration was unlawful, arises from 28 U.S.C. § 2244(b) and 28 U.S.C. § 2254, Rule 9(b). These provisions provide for dismissal when, inter alia, the petitioner has "abused the writ." The government has the initial burden of pleading abuse of the writ. McCleskey v. Zant, 499 U.S. 467, 477 (1991). Here, the government discharged this burden in its March 31, 1994 answer and memorandum in response to McKinley's petition for habeas corpus. The government identified the prior petition that McKinley filed, stated which claims he was raising for the first time in his second petition, and pleaded abuse of the writ. McCleskey, 499 U.S. at 494; Zavesky v. Miller, 79 F.3d 554, 556 (7th Cir.1996) (per curiam ), petition for cert. filed, (March 3, 1996) (No. 95-8819).
 
 
 7
 We first conclude that McKinley's argument that he was not given notice that the district court was considering dismissing his claim on abuse of the writ grounds, is not supported by the record. A petitioner "must be given a reasonable opportunity to respond to the government's charge of abuse [of the writ]." Robinson v. Fairman, 704 F.2d 368, 370 (7th Cir.1983). McKinley was given an adequate opportunity to respond. The government's March 31, 1994 filing pleaded abuse of the writ. On April 5, 1994, the district judge directed McKinley to respond to the government's argument. Moreover, McKinley responded to the government's assertion that the court should not reach the merits of his petition because he had filed an earlier one. He filed a motion to amend his petition to demonstrate that the district court should entertain his petition notwithstanding that this was his second bite at the apple in federal court. The district court considered and rejected the reasons that McKinley gave for not raising all his claims the first time around. Therefore, we see no reason to give McKinley another chance to explain his reasons for using salami tactics in his federal court filings. Moreover, as explained below, even examining McKinley's explanation that he filed in this court (and he certainly knew about the government's abuse of the writ defense by the time of his appeal), we conclude that McKinley has failed to show that his second petition should be examined on the merits. We now move onto the substance of the abuse of the writ issue.
 
 
 8
 Because the government discharged its burden, the ball was in McKinley's court to show that he had not abused the writ in filing a second petition for habeas corpus. McCleskey, 499 U.S. at 477. A petitioner can discharge this burden in one of two ways. First, he can show cause for failing to raise the claims he is raising for the first time in the second petition and prejudice therefrom. McCleskey, 499 U.S. at 494; Haley v. United States, 78 F.3d 282, 284 (7th Cir.1996). In the alternative, the petitioner can show that a fundamental miscarriage of justice will result if the court fails to entertain the claim. McCleskey 499 U.S. at 494-95.
 
 
 9
 McKinley has not shown cause for failing to assert in his earlier petition the claims that he now brings. In order to establish cause, the petitioner must show that an "external impediment ... prevented petitioner from raising the claim." Id. at 497. In the district court, McKinley's explanation as to why he failed to raise all his claims in his first petition is merely a conclusion. McKinley stated that the claims he brought in his second petition were entirely different ones than he raised in his first petition, that the transcript was "voluminous," and that he had no reason to intentionally withhold those issue in his first petition. The fact that he brings different claims the second time around, does not help McKinley in that the abuse of the writ doctrine assumes that different claims are being asserted in a subsequent petition. Moreover, the fact that he did not intentionally withhold claims is not a sufficient basis upon which to find that he did not abuse the writ. See id., 499 U.S. at 489 ("Abuse of the writ is not limited to deliberate abandonment."). Also, the fact that the transcript was voluminous does not excuse McKinley's failure, for in determining whether there is an abuse of the writ, "the question is whether petitioner possessed, or by reasonable means could have obtained, a sufficient basis to allege a claim in the first petition...." Id. at 498 (emphasis added).
 
 
 10
 In his appellate brief, McKinley asserts that he was unaware of some of his present claims at the time he filed his first petition. It is questionable whether we should even consider this argument, for to the extent that he did not make this claim in the district court, he has waived it. Lostutter v. Peters, 50 F.3d 392, 394 (7th Cir.), cert. denied, 116 S.Ct. 130 (1995). Even construing McKinley's pleadings liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972), so as to consider this claim of ignorance, we conclude that McKinley has not shown cause for failing to raise these arguments the first time around. Beyond the mere conclusion that he "found out" about this claim from a fellow inmate, he does not specify what he found out after he filed his first petition. He does not say whether he learned facts of which he was previously unaware or found out about the legal basis of the claim he now brings. Moreover, examining the nature of the claims that McKinley now asserts, we do not see how he could not have been aware of these claims at the time he filed his first petition. As far as we know (and McKinley has not informed us otherwise) McKinley was present when the trial judge denied his counsel a continuance in order to prepare for closing argument. This is the central fact supporting his claim that he was denied effective assistance of counsel. Moreover, in his first petition, McKinley included a claim that he was denied effective assistance of counsel based upon the judge's actions in limiting the scope of his lawyer's questioning. Thus it appears that McKinley was not ignorant of the factual or legal bases of this claim.
 
 
 11
 McKinley's second claim in the instant petition goes to a limitation on cross-examination. Assuming for purposes of this appeal that this claim was not raised in his first petition, McKinley's assertion that he was unaware of this claim at the time he brought his first petition is unavailing. He was presumably present when the trial judge limited the scope of cross-examination. In addition, he would have been aware, at the time the testimony was given, of any discrepancy between the testimony of a witness against him and what actually happened. Therefore, we do not see what it is that McKinley could have learned after his first petition was filed that would have alerted him to the possibility of bringing this claim. With regard to any argument that he would have that he was aware of the factual but not the legal basis of this claim, the reasoning that we applied to his first claim in this petition applies equally here. McKinley's first petition includes claims so similar to the present ones that it is apparent that he was aware of the legal ground of the present claim at the time of the initial petition.
 
 
 12
 McKinley's argument that his pro se status was cause for failing to include all his claims in his first petition is also not persuasive. While we construe pro se pleadings liberally, that status alone is not sufficient for a finding of cause for not filing all claims in one petition. Barksdale v. Lane, 957 F.2d 379, 385 (7th Cir.), cert. denied, 506 U.S. 890 (1992). Thus, McKinley has failed to show cause for not including in his earlier petition the claims that he now brings in a subsequent petition. We therefore need not examine the prejudice leg of the doctrine.
 
 
 13
 McKinley also has not shown that the district court's failure to reach the merits of the instant petition will result in a miscarriage of justice. McKinley does not even articulate an argument upon this ground. Moreover, our examination of the case makes clear to us that there was no miscarriage of justice. A miscarriage of justice claim must be based on an assertion of actual innocence. Sawyer v. Whitley, 505 U.S. 333, 339 (1992) (citing Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986) (plurality opinion)); Zavesky, 79 F.3d at 556. In order to prevail on a claim of actual innocence, the petitioner must show that in light of all the evidence, including that claimed to be illegally obtained and/or admitted at trial; there is a fair probability that the trier of fact would have had a reasonable doubt about his guilt. Kuhlmann, 477 U.S. at 455 n. 17; Zavesky, 79 F.3d at 556.
 
 
 14
 Here, McKinley does not claim that he is actually innocent. In fact, he did not even include the state court trial or appellate record in the record on appeal. See FED.R.APP.P. 10(b)(2) ("If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion.") Moreover, even if we accept the errors he alleges as true and as being a violation of his constitutional rights, they fall far short of putting his guilt into doubt. At trial, the state introduced testimony by the victims of the robbery that identified McKinley as one of the assailants, testimony by a police officer who discovered proceeds of the robbery in McKinley's car, and evidence linking McKinley to the shotgun used in the robbery. Even if we concluded that the trial judge committed constitutional error in limiting cross-examination of McKinley's codefendant and not granting a continuance so that McKinley's attorney could prepare for closing argument, given the above evidence it is clear that a finder of fact would not have had a reasonable doubt about his guilt even if the trial judge had ruled in the manner that McKinley asserts was proper.
 
 
 15
 The order of the district court dismissing McKinley's petition for habeas corpus is
 
 
 16
 AFFIRMED.
 
 
 
 + The original petition named Howard Peters, Warden and Roland Burris, Attorney General, as respondents. Kenneth Dobucki has been substituted as the sole respondent. Fed.R.App.P. 43(c)(1). He is at present the warden of Graham Correctional Center, the petitioner's place of incarceration. For a petitioner who is currently incarcerated, a writ of habeas corpus should name only the warden as the respondent, 28 U.S.C. § 2254, Rule 2.
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary and the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 In addition, in his petition McKinley argues that he should have been allowed to introduce evidence of his acquittal on a shotgun charge involving the same weapon used in the robbery trial in which he was convicted. Although he mentions this claim in his appellate brief, he does not press it on appeal
 
 
 [2]
 On April 24, 1996, after McKinley had filed his notice of appeal and the appeal was fully briefed, the President signed into law the "Antiterrorism and Effective Death Penalty Act of 1996" (Pub.L. No. 104-132, 110 Stat. 1214.) Title I of this Act significantly curtails the ability of parties to bring subsequent appeals. We do not need to decide in the instant case whether and to what extent the recent amendment affects the present appeal, however, because we conclude that even under the more lenient standard that was in place prior to this recent amendment, the district court properly dismissed McKinley's petition